UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-81301-CIV-ZLOCH

RICHARD SHANNON,

        Plaintiff,

vs.

**O R D E R**

JOHN E. POTTER, Postmaster
General, United States Postal
Service,

        Defendant.
_____/

    THIS MATTER is before the Court upon Defendant John E.
Potter's Motion For Summary Judgment (DE 31).   The Court has
carefully reviewed said Motion and the entire court file and is
otherwise fully advised in the premises.

    Plaintiff Richard Shannon initiated the above-styled cause
with the filing of his Complaint (DE 1), and thereafter filed the
currently operative three-count Amended Complaint (DE 11).   The
Amended Complaint contains three claims under the Rehabilitation
Act of 1973, 20 U.S.C. §§ 791, et seq. (hereinafter the
"Rehabilitation Act"), for (1) denial of reasonable accommodations,
(2) constructive discharge, and (3) retaliation.   The Court
previously dismissed Count II of the Amended Complaint for
Plaintiff's failure to exhaust his administrative remedies. See DE
24.   Defendant now moves for Summary Judgment on Counts I and III
of the Amended Complaint.

    The Rehabilitation Act provides that "no otherwise qualified

individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability."  29 U.S.C. § 794(a) (2006); Sutton v. Lader, 185 F.3d 1203, 1207 (11th Cir. 1999).  The standard for determining liability under the Rehabilitation Act is the same as that used in Americans with Disability Act, 42 U.S.C. §§ 12101, et seq. (hereinafter the "ADA").  See Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).  Courts apply the same burden-shifting analysis used in Title VII actions to claims brought under the Rehabilitation Act for both discrimination and retaliation.  See Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

Plaintiff was employed as a building mechanic for the United States Postal Service.  In 1999, he suffered a heart attack and claims that from that point he was disabled as that term is defined under the Rehabilitation Act.  Plaintiff continued to work as a mechanic at that time.  Initially, he had limited restrictions on his duties, and when he stopped receiving formal permission to restrict his duties, he relied upon co-workers to assist him with the more strenuous duties of his job.  During this time, Plaintiff filed several formal complaints concerning the use of his sick leave.  In 2005, a new manager was hired, and he required Plaintiff to work as a mechanic in a capacity that would not allow him to rely on others.  Plaintiff protested that he could not perform that work, and the new manager demanded that Plaintiff substantiate his

restrictions.  When Plaintiff failed to provide his manager with the documentation, he was forced to accept another position. Thereafter, he took extended sick leave, filed for formal disability benefits, and then filed this action.

The Court has carefully reviewed the entire court file and for the reasons expressed more fully below finds that Plaintiff has failed to establish a <u>prima facie</u> case of either discrimination or retaliation.  Specifically, Plaintiff has not established that he is disabled, as that term is defined in the Rehabilitation Act and in the caselaw of this Circuit.  Even if Plaintiff were disabled, he cannot establish that he is an otherwise qualified individual under the Rehabilitation Act, and he cannot establish that Defendant failed to make reasonable accommodations for the sake of his disability.  Therefore, Plaintiff cannot prevail on his claim of discrimination under the Rehabilitation Act.  In addition, Plaintiff's allegations concerning the form of the retaliation he suffered fail, as a matter of law, to establish a <u>prima facie</u> case of retaliation.  Specifically, he cannot establish that he was discriminated against for engaging in a protected activity, or that a causal link exists between the protected activity and the conduct Plaintiff claims was retaliatory.  Further, Defendant has offered a neutral, non-retaliatory reason for the employment decisions concerning Plaintiff, and Plaintiff has not offered any evidence to establish that the same are pretext.

I. <u>Evidentiary Issues</u>

Before addressing the substantive arguments made in Defendant's motion, it is necessary to draw Plaintiff's attention to the dictates of the Local Rules concerning the requisite form and substance of motions for and responses in opposition to summary judgment in this district. Local Rule 7.5 states that papers opposing a summary judgment motion: "shall include a memorandum of law, necessary affidavits, and a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." S.D. Fla. L.R. 7.5.B. Any additional facts that Plaintiff contends are material are to be numbered and separated below. <u>Id.</u> 7.5.C. This rule "ensure[s] that statements of material facts filed by movants and opponents shall correspond with each other in numerical order so as to make review of summary judgment motions less burdensome on the Court." Local Rule 7.5 Comments (2008 Amendment).

Plaintiff did not attempt to comply with the Local Rules in this regard. Rather, in his Response (DE 40) he simply states whether each paragraph of Defendant's Statement Of Material Facts (DE 32) are admitted or denied. Then he provides his own unnumbered narrative of the facts, with sparing reference to Plaintiff's Affidavit(DE 39) and other attached Exhibits. This is incompatible with the requirements of the Local Rules. Further, Plaintiff was on notice of his failure to comport with the Local

4

Rules and failed to remedy this failure with any amended pleadings. See DE 43. Therefore, the facts stated by Defendant in his statement of material facts that are not controverted and are supported by evidence are deemed admitted for the purpose of this Motion. S.D. Fla. L.R. 7.5.D. The Court will, however, for the sake of any reviewing court note in its analysis the facts that are further alleged in Plaintiff's narrative. These facts, while noted, do not change the Court's analysis.

Coupled with Plaintiff's failure to comply with the Local Rules governing summary judgment motions, he has also failed to comply with the dictates of Federal Rule of Civil Procedure 56. In Defendant's Reply (DE 43) he seeks to strike many of the statements made in Plaintiff's Affidavit, and all of the Exhibits attached thereto, because they are inadmissable under Federal Rule of Evidence 901.

Motions for summary judgment are governed by Rule 56; specifically, Rule 56(e) controls the use of Affidavits and documents that may be considered with a motion for summary judgment. Courts and commentators alike agree that a court may consider any evidence when ruling on a motion for summary judgment that would be admissible at trial. 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2721 (1998) ("[T]he particular forms of evidence mentioned in [Rule 56] are not the exclusive means of presenting evidence on a Rule 56 motion. The

Court may consider any material that would be admissible or usable at trial."); see also 10A Wright et al., supra § 2738.  Thus, the question for each Exhibit Plaintiff seeks to offer is whether it would be admissible at trial.

Here Defendant has thoroughly and accurately objected to the statements made in Plaintiff's Affidavits.  See DE 43, p. 2, n.1. Defendant has also objected generally to all of the Exhibits introduced through Plaintiff's Affidavit, stating that they are inadmissable because they cannot be authenticated.  Because Defendant does not make any specific objections beyond authenticity to the Exhibits, the Court will only analyze whether each Exhibit is admissible at trial through Plaintiff's Affidavit (DE 39).

For an exhibit to be considered in support of or opposition to a motion for summary judgment, the exhibit must be admissible at trial.  Federal Rule of Evidence 901 provides that authentication or identification of a document is a condition precedent to the document being admissible into evidence.  Fed. R. Evid. 901(a). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  10A Wright et al., supra § 2722 (footnotes omitted).  As an example, "a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition."  Id.

Plaintiff has submitted a nine-page Affidavit (DE 39) that references nine attached Exhibits that he argues defeat Defendant's position on summary judgment.  Exhibit A submitted by Plaintiff is a memorandum written on a doctor's stationary, but not addressed to anyone; however, it states it is regarding Richard Shannon. In reference to this Exhibit, Plaintiff's Affidavit states that "[i]n August 2003, a physician who examined me . . . stated that I should not lift more than five pounds."  DE 39, ¶ 8.  This does not establish who the doctor is, whether Plaintiff was there when the memorandum was prepared and signed, or that he is otherwise competent to testify that the memorandum came from the doctor. This Exhibit is not authenticated for purposes of Federal Rule of Evidence 901; therefore, the Court will strike Exhibit A for purposes of the instant Motion.

Exhibits C and D are also unauthenticated.  Exhibit C is a purported Affidavit by Plaintiff's supervisor Carl Powell.  The only relation Exhibit C has to an Affidavit is the title "Affidavit Questions."  It is not sworn under the penalty of perjury or notarized, there is nothing substantiating that Carl Powell signed this document, or that he provided the responses given therein. Further, the document is incomplete in that it states to be the second of six pages, but the rest of the pages do not appear. Further, there is nothing that gives the Court any indication that Exhibit C was produced by Powell.  Therefore, the Court will strike

Exhibit C.   Exhibit D states it is a supervisor form that is purportedly produced by Powell.  However, there is nothing that authenticates that Powell actually produced the same.  Therefore, Exhibit D will also be stricken.

Exhibit G, an email from Nancy Miller to a variety of individuals concerning Plaintiff, is also unauthenticated.  Nothing in the Affidavit (DE 39) or Exhibit G thereto suggests it is self-authenticating.  Therefore, the Court will strike Exhibit G.

Exhibit H is a letter from Louis Anastasi, Jr.  It represents that he was employed by Defendant in the late 90's, and he was treated differently than Plaintiff.  Attached to the letter are several forms that are also unauthenticated.  Nothing suggests that the letter or the forms attached are authenticated for purposes of this Court determining their admissibility.  It is also unclear to the Court what the attached forms purport to convey for purposes of this Motion.  Therefore, the Court will strike Exhibit H.

Exhibit B is a series of correspondences between Plaintiff and his supervisors.  Although these documents are not authenticated by the supervisors, for purposes of Rule 901, their authenticity is satisfied by the so-called "reply rule."  United States v. Henry, 164 F.3d 1304, 1309 (10th Cir. 1999).  Because Plaintiff has authenticated the correspondences sent by him, those documents sent in response are also authenticated.  United States v. Reilly, 33 F.3d 1396, 1403-04 (3d Cir. 1994).  Exhibits E, F, and *I* were

produced by Plaintiff, and his Affidavit is sufficient to authenticate the same.  Further, the response given by Miller on the lines provided in Exhibits E and F can be authenticated under the reply rule.  <u>Id.</u>

In conclusion, the Court finds that Exhibits A, C, D, G, and H cannot be considered for purposes of this Motion, because they are inadmissable.  Fed. R. Civ. P. 56(e)(1).  Defendant's objections to the other Exhibits are overruled.

## II. <u>Factual Background</u>

Plaintiff began his employment with Defendant in 1988, and he was by all accounts an excellent employee.  He started working first as a custodian, and in 1992 he was promoted to the position of Building Equipment Mechanic (hereinafter "BEM").  Plaintiff had various duties and responsibilities as a BEM.  While executing his duties, Plaintiff would have to perform strenuous exertions, such as climbing to difficult heights and lifting heavy objects in excess of 70 lbs.

Between 1992 and 1999, Plaintiff was frequently assigned to a travel detail.  This detail consisted of Plaintiff and other BEMs traveling to service various Postal Service facilities throughout West Palm Beach County.  Unfortunately, in August 1999 he suffered a severe heart attack that required invasive surgery.  Thereafter, he took some time off from work to recover.  Before he was permitted to return to work he had to submit medical documentation

showing he was fit for duty, meaning he was neither a hazard to himself nor others.  Initially, Plaintiff's physician indicated that he could return to work, in a "light duty" status, with certain limitations.  These limitations included, for an indefinite period: 1) no restrictions on Plaintiff lifting 0-10 lbs.; 2) partial restrictions on working above the shoulder, stooping, kneeling, and repeated bending; and 3) full restrictions on lifting weights above 10 lbs., pulling/pushing, carrying and climbing. Obviously, these restrictions precluded Plaintiff from performing the full range of job duties that he performed in the past as a BEM.  Nevertheless, he returned to work in the middle of October 1999.

Upon returning to work, Plaintiff was required to submit various forms to his supervisors establishing his ability to continue to work in a light duty status.  Within almost a year of returning to work, he submitted a form that indicated that he no longer had any restriction on performing ordinary activities, however, he had to eliminate strenuous activity.  DE 33, Ex. C, Plaintiff's Dep. pp. 55-56.  In October 2003, Plaintiff collapsed at work and was taken to a nearby hospital.  The record does not indicate whether this collapse was a heart attack.  After returning to work he was placed on the same limitations his physician prescribed in 1999.  A year later, he filed two Equal Employment Opportunity (hereinafter "EEO") complaints concerning the way some

of his leave-time hours were handled.

In February 2005, Plaintiff's immediate supervisor retired and was replaced, temporarily, by John Gesswein who had no knowledge of Plaintiff's past medical restrictions.  At the time, Gesswein's department faced the turnover of six BEMs, including the BEM placed on the travel detail.  In response, on February 24, 2005, Gesswein informed Plaintiff that he would be assigned to the travel detail beginning February 28, 2005.  In his declaration, Gesswein explained his decision as a product of his need to train a BEM to take over the travel detail and the fact that he considered Plaintiff a dependable and competent employee who required minimal supervision.

On February 28, 2005, Plaintiff began work on the travel detail, and on March 1, 2005, he informed Gesswein that he had certain medical restrictions and could not perform the travel detail's duties without exceeding those restrictions.  Plaintiff was removed from the travel detail during the next weekly schedule.

Plaintiff claims that during the time he was assigned to the travel detail he was required to carry heavy objects and a large tool box.  Plaintiff was at all times with another BEM when he was on the travel detail, and he did not require any medical attention because of that assignment.

After Plaintiff informed Gesswein of his restrictions, Gesswein ordered Plaintiff to provide him with documentation

11

substantiating the same. Plaintiff submitted the documentation he was provided upon returning to work in 2003. At the same time, Gesswein began making inquiries as to the manner in which Plaintiff carried out his duties as a BEM. Through these inquiries, he learned that Plaintiff often requested the assistance from other employees when he did more than minimal lifting or there was more than minimal exertion involved with his duties as a BEM.

Gesswein then required Plaintiff to submit updated documentation that reflected his current medical restrictions, within ten days of their meeting. Geisswein asked that it be submitted by March 14, 2005. By May 2, 2005, almost six weeks after Geisswein's first request, Plaintiff had not submitted the updated documentation. Geisswein again requested the necessary documentation, and demanded that Plaintiff submit the same within two days of the request.

On that same day, Geisswein gave Plain1tiff an "Offer of Modified Assignment (Limited Duty)" form. The form described a mail clerk position that Geisswein was authorized to offer Plaintiff. It listed several physical requirements, which were less strenuous then his duties as a BEM, and which he was able to perform based on his 2003 documentation. The mail clerk position provided Plaintiff with the same salary, office location, hours, and days off as his position as a BEM. Plaintiff claims that he would have lost the  seniority he accrued over his time as a BEM.

12

After considering the offer, Plaintiff indicated that he would accept the position, signed the form, and indicated he accepted the position "under protest."

The next day Plaintiff briefly returned to work but quickly departed on sick leave.  Thereafter, he used his sick time, until August when he submitted an application for disability retirement benefits.  Plaintiff never returned to work after May 3, 2005.

### III. Standard of Review

Summary judgment is authorized when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of his case on which he will bear the burden of proof at trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Inferences are drawn in favor of the non-moving party, but such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Advert., 57 F.3d 1317, 1323 (4th Cir. 1995).  The non-moving party "may not rest upon the mere allegations or denials of the adverse

13

party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party responding to a motion for summary judgment do so with affidavits, depositions, or other admissible evidence in order to reflect that there are material facts that must be presented to a jury for resolution. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970). Conclusory allegations without specific supporting facts have no probative value. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (citing Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)). Where the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587. Although there may be evidence somewhere within the non-moving party's submitted record that might create a genuine issue of material fact, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Forsberg v. Pac. N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988).

## IV. Disability Analysis

The Rehabilitation Act provides that "no otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a) (2006). The standard for determining liability under the Rehabilitation Act is the same as that used in the ADA. See Cash, 231 F.3d at 1305. To establish a prima facie case of

14

discrimination under the ADA, a plaintiff must show that he (1) is disabled; (2) is a "qualified individual," and (3) was discriminated against because of his disability.  Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000); Garrett v. University of Ala. at Birmingham Bd. of Trustees, 507 F.3d 1306, 1310-11 (11th Cir. 2007).  An individual is "disabled" for purposes of the Rehabilitation Act if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  29 C.F.R. § 163.02(g).  The Court strictly interprets the terms "major life activities" and "substantially limits" in order "to create a demanding standard for qualifying as disabled."  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

## A. Disability

Plaintiff claims that after his heart attack in 1999 he was disabled under the Rehabilitation Act.  Specifically, he claims that he was substantially limited in one or more major life activity in 2000 when his cardiologist imposed full restrictions on Plaintiff's lifting more than ten pounds and placed partial restrictions on his working above his shoulder.  In his Response (DE 38) to the instant Motion, he also claims that in 2003 he was further restricted to lifting no more than five pounds.  DE 38, p. 11.  This is the extent of the disability that Plaintiff claims.

15

The Court notes that Plaintiff has offered as Exhibit A, the evidence that establishes the restriction for lifting no more than five pounds.  DE 38, Ex. A.  As stated above, this Exhibit has been stricken; however, for the benefit of the Parties and any reviewing court, the Court will analyze Plaintiff's claim as though Exhibit A were considered.

1.

The question for the Court is whether the restriction placed on Plaintiff that concerned lifting and working above his shoulders substantially limited him in one or more of his major life activities.  The term "substantially limited" is not defined in the ADA, but the term is interpreted by courts as creating a demanding standard.  In Toyota Motor Mfg.,, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  534 U.S. 187, 196.  In several cases, the Eleventh Circuit has held that a limitation on a person's ability to lift things does not qualify as a substantial limitation for purposes of the ADA.  See Carr v. Publix Super Markets, Inc., 170 Fed. Appx. 57, 60-61 n.3 (11th Cir. 2006) ("[W]e doubt that a lifting limitation states a per se ADA disability."); Hillburn v. Murata Electronic N. Am., Inc., 181 F.3d 1220, 1227-28 (11th Cir. 1999) (noting that plaintiff's allegations of a disability on the

16

basis of a ten pound lifting restriction did not create a <u>prima facie</u> case for a disability); <u>Chanda v. Engelhard/ICC</u>, 234 F.3d 1219, 1222 (11th Cir. 2000) (noting "a lifting restriction, did not constitute a disability under the ADA") (citing <u>Hillburn</u>).

Plaintiff has not submitted any evidence concerning how this lifting limitation has prevented him from performing any of his major life activities.  The evidence he has submitted only refers to his duties as a BEM.  But, at the same time, he claims that he is able to perform the other functions as a BEM, without incident. DE 38, p. 13.  Given the Eleventh Circuit's holdings concerning lifting restrictions and the lack of evidence concerning Plaintiff's inability to enjoy any of his major life activities, the Court finds that Plaintiff has failed to establish that he is disabled under the Rehabilitation Act.

Further, Plaintiff has not produced any evidence in either his Affidavit, Deposition, or as an Exhibit concerning how the limitation of working above his shoulders has limited him in any major life activity.  His Affidavit states that other than the strenuous-lifting restriction he was able to perform the essential tasks of a BEM.  Thus, he cannot be considered disabled based on the limitation of working above his shoulders. Therefore, without any evidence of how this limitation keeps Plaintiff from engaging in a major life activity, the Court cannot find that he is disabled under the Rehabilitation Act.

17

2.

Plaintiff also contends that he is disabled under the Rehabilitation Act based on having a record of impairment. DE 38, p. 12. The phrase "record of impairment" means a claimant "has a history of, or has been miss-classified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). In Carr the Eleventh Circuit noted that "the record of impairment must show that the impairment substantially limited the claimant in one or more of his major life activities." Carr, 170 Fed. Appx. at 61 (citing Chanda, 234 F.3d at 1224 n. 33; Hilburn, 181 F.3d at 1229)).

Here, Plaintiff was never classified as disabled by Defendant. He was initially restricted in the duties he could perform, including lifting. DE 39, Ex. B. The Plaintiff has submitted correspondence between himself and Powell concerning restrictions on his work duties. Id. Each of the documents shows that Plaintiff requested restricted duties and that Powell or another supervisor granted the same for a limited time. After the time expired, Plaintiff would submit another request, the final document submitted in Exhibit B establishes that Plaintiff was assigned light work duty until September 2000. These documents do not establish that this limitation was a permanent disability that substantially limited him in one of his major life activities. Nor do these documents establish that Plaintiff considered himself as

18

disabled; they simply establish that for a time he had certain restrictions on his work duties. The fact that Plaintiff continued to perform his work as a BEM, albeit by shifting some of the burdens to other employees because he felt that he had the right to continue with his limitations, does not establish that he was classified as having a disability. DE 39, ¶ 24.

The Exhibits submitted by Plaintiff that purport to restrict his activities or otherwise give evidence of his impairment have not been verified by an Affidavit to be considered as part of this Motion. <u>See</u> DE 38, Ex. A & C. Further, even considering the same, they do not establish that Plaintiff has an impairment or that Defendant considered him to have an impairment that substantially limited one or more of his major life activities. <u>See</u> <u>Carr</u>, 170 Fed. Appx. at 61.

3.

The third way that Plaintiff can be considered disabled under 29 C.F.R. § 1630.2(g) is that he was regarded as having such an impairment. <u>Id.</u> This is defined under subpart (*l*) of the same regulation. There are three means by which a person can be considered qualified. A person is disabled if the person

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h)

19

(1) or (2) of this section but is treated by a covered
entity as having a substantially limiting impairment.

Id. § 1630.2(*l*)(1)-(3).  Defendant argues that the documentation
submitted by Plaintiff did not show a substantial limitation
sufficient to establish that he was disabled, and that Plaintiff
was never considered disabled by his supervisors.  DE 32, ¶¶ 13,
21, 48-50.  While he was put on light duty for a time, see DE 39,
Ex. B; DE 33, Ex. 3, his supervisors never thought that Plaintiff
could not perform this work because he was disabled.  DE 33, Ex. 3,
¶¶ 8-10.

In response, Plaintiff offers the "Affidavit" of Carl Powell,
his former supervisor.  As discussed above, this is not evidence
that the Court will consider in response to this Motion.  Further,
even if the Court did consider such information, in paragraph 4 of
the "Affidavit" it states:

> Do you have documentation that substantiates the
> Complainant's disability?  Does this documentation
> display that the Complainant's impairment substantially
> limits his ability to perform a major life activity
> (e.g., caring for one's self, performing manual tasks,
> walking, seeing, hearing, speaking, breathing, learning,
> or working?

DE 38, Ex. C.  The next line, which the Court can only assume would
be Powell's response, states "[t]here was documentation requesting
light duty, limitation on heavy lifting."  Id.  Powell's response
does not speak to the nature of a disability but a limited
restriction to light duty.

The fact that Powell did not consider Plaintiff disabled in a

major life activity is substantiated by Plaintiff's Exhibit B.[1]  It
contains numerous documents requesting light duty by Plaintiff, and
his supervisors granting the same.  With each request for light
duty, there was a time limitation prescribed in the memorandum
granting the same.  DE 38, Ex. B (correspondence between Plaintiff
and his supervisors).  The last limitation showed that he had
restrictions on his work duties until September 14, 2000.  DE 38,
Ex. B, p. 41.  There is nothing offered by Plaintiff that
establishes or suggests that anyone considered him limited in his
ability to execute his duties as a BEM for more than a limited
time.  Thus, Plaintiff has failed to establish that he was a
disabled under the regulation so as to make a prima facie case
under the Rehabilitation Act.

Nevertheless, for the benefit of the Parties and any reviewing
court, the Court will address whether Plaintiff was a qualified
individual under the statute and whether he was discriminated
against on the basis of his disability.

B. Qualified Individual

The second element that Plaintiff must establish to make a
prima facie case is that he was "otherwise qualified" to do his job
during the relevant time period.  Sutton v. Lader, 185 F.3d 1203,

---

[1] The Court notes that this Exhibit is not verified or
accompanied by an Affidavit, but it will be considered for the
limited purpose of addressing Plaintiff's argument if a reviewing
court determines his Exhibits should be considered as evidence.

1210 (11th Cir. 1999).  This means that Plaintiff could perform the "essential functions of the job in question with or without reasonable accommodation."  29 C.F.R. § 1630.2(m); id.

Plaintiff argues that he was able to perform the essential functions of a BEM, and this fact is established by the fact that he did so from the time of his heart attack in 1999 until 2005. The essential functions of a BEM include the ability to perform strenuous exertions, such as lifting heavy objects and climbing. DE 30, ¶ 4; DE 33, ¶ 5.  It is clear that after Plaintiff returned to work in 1999 he was never capable of performing these duties. Id. 30 ¶¶ 9, 11, 18, 30, 34.  Plaintiff was permitted to perform light duty during this time until September 2000, see DE 38, Ex. B, and he was named employee of the year while doing so.  However, sometime during the six-year period, Plaintiff was no longer given formal permission to perform light duty, and he assumed that he had a general right to be excused from the strenuous work that accompanied BEM's duties.  Plaintiff Dep. 55-59.

The Rehabilitation Act does not require an employer to eliminate an essential function of a job as a reasonable accommodation to a disabled employee.  Rio v. Runyan, 972 F. Supp. 1446, 1457 (S.D. Fla. 1997); see also Sutton, 185 F.3d at 1211 ("There is no obligation under the Act to employ people who are not capable of performing the duties of the employment to which they aspire.") (citing Carter v. Tisch, 822 F.2d 465, 467 (4th Cir.

22

1987)).  Here Defendant's discretionary act of allowing Plaintiff to perform light duty for a limited time does not give rise to such an accommodation, as an indefinite right.  Southeastern Community Coll. v. Davis, 442 U.S. 397, 411-14 (1979) (noting that the Rehabilitation Act does not require employer to change job requirements or ignore the fact that the employee could not perform them).  Plaintiff could not perform the essential duties associated with his job as a BEM.  And he did not have the right to continue burdening the other BEMs with the strenuous work that he could not perform.  Holbrook, 112 F.3d at 1528 ("An employer is not required by the ADA to reallocate job duties in order to change essential job functions.") (quotation omitted).  It is clear from the evidence submitted that Plaintiff's ability to engage in light work-duty was both temporary and a burden on the Defendant.  DE 33, Ex. 4, pp. 61-64; DE 33, Ex. 2, ¶ 22.  This is unrefuted.

Thus, it is clear from the evidence submitted that Plaintiff could not perform the essential functions of a BEM with or without a reasonable accommodation.  A reasonable accommodation does not consist of allowing Plaintiff to burden his fellow workers with any and all work that exceeds his limitations.  Stubbs v. Marc Center, 950 F. Supp. 889, 895 (S.D. Ill. 1997) (finding that an employee's request that his duties be shifted to his co-workers and subordinates was not a request for reasonable accommodation under ADA).

23

C. Unlawful Discrimination

The third prong of Shannon's prima facie case is that he must establish that Defendant unlawfully discriminated against him. "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide reasonable accommodations for the disability--unless doing so would impose undue hardship." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). To establish this prong, the Court must determine that Defendant was aware of Plaintiff's disability, that some reasonable accommodation was available, and that he failed to provide him with a reasonable accommodation, unless doing so would impose undue hardship on the employer. Id. at 1255.

Plaintiff's claims of discrimination are threefold. The thrust of his discrimination claim is that Defendant discriminated against him when it failed to accommodate him by assigning him to the travel detail, thereby forcing him to work outside his medical restrictions. Plaintiff further alleges that this discrimination continued when Defendant placed unreasonable deadlines on him to document his limitations and when Geisswein later made him sign a job offer as a mail clerk. DE 38, p. 14.

Assuming, arguendo, that Plaintiff meets the other elements of his prima facie case, Plaintiff's claim is that he was not permitted a reasonable accommodation when he was forced on the travel detail for a week in March. Nothing in the record suggests

24

that Shannon's supervisor, Geisswein, knew of his impairment, or believed he had one. Once it was brought to Geisswein's attention that Plaintiff was limited in his ability to work, he was transferred from the travel detail for the next weekly schedule. In essence, when Plaintiff's medical restrictions came into play he was accommodated immediately by being placed back in his regular position.[2]  Thus, Plaintiff has failed to show that when he was assigned to the travel detail he was not accommodated by Defendant once it became aware of his limitations. Further, Plaintiff cannot establish that Geisswein knew of his limitations prior to him being transferred to the travel detail.

Second, Plaintiff claims that Defendant discriminated against him by requiring him to submit documentation within an unreasonably short time frame. While ten days may appear to be a quick turnaround to procure documentation from a medical doctor, it does not give rise to a cause of action for discrimination. See Burgos v. Chertoff, 274 Fed. Appx. 839, 842 (11th Cir. April 23, 2008) (noting the harassment must be sufficiently severe or pervasive to alter the terms and conditions of employment).

Plaintiff made his limitations an issue when he requested that

---

[2]In his Deposition, Plaintiff states that he was forced to exceed his medical limitations by carrying his tool box while on the road duty.  DE 33, Ex. C, pp. 80-81.  However, Plaintiff also conceded that the tools he carried were also in the possession of the other BEM Gordon, and that he could have used Gordon's tools but chose not to do so.  Id. pp. 81-82.

he not be placed on the travel detail; Defendant responded by requesting verification of his limitations.  This request for verification was something that Plaintiff's supervisors had done many times in the past.  DE 38, Ex. B.  Further, Defendant did not act upon its ultimatum until six weeks after the deadline.  In total, Plaintiff was given almost two months to provide documentation concerning his disability.  This is not actionable to begin with, and if it were, Defendant's actions were reasonable under the circumstances.  See id.

Third, Plaintiff claims that forcing him to accept a position as a mail clerk was discriminatory under the Rehabilitation Act. After Plaintiff failed to provide Defendant with documentation of his impairment, it operated under the assumption that his inability to lift objects in excess of ten pounds meant he could not perform the work of a BEM.  In response, Defendant offered Plaintiff, a position with the post office as a mail clerk.  This position would pay Plaintiff the same salary, hours, days off, and he would be assigned at the same location as his position as a BEM.  Defendant argues that this job offer satisfies his duty to provide Plaintiff with a reasonable accommodation.

Under the ADA, to which the Rehabilitation Act refers, a qualified individual with a disability is unlawfully discriminated against when his employer does not take steps to and ultimately does not reasonably accommodate the disability. 42 U.S.C. §

12112(b)(5)(A).   Defendant  can  refuse  to  provide  such  an
accommodation if it can demonstrate that the accommodation would
impose  an  undue  hardship.   The  term  "reasonable  accommodation"
includes such things as "job restructuring, . . . acquisition or
modification  of  equipment  or  devices,  and  other  similar
accommodations  for  individuals  with  disabilities."  42  U.S.C.  §
12111(9)(B).   The  Eleventh  Circuit  has  noted  that  "the  word
'reasonable' as an adjective for the word 'accommodate' connotes
that an employer is not required to accommodate an employee in any
manner in which that employee desires." Stewart v. Happy Herman's
Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997 (quoting
Lewis v. Zilog, Inc., 908 F.Supp. 931, 947 (N.D. Ga. 1995)).  The
word "reasonable" would be rendered superfluous "if employers were
required  in  every  instance  to  provide  employees  'the  maximum
accommodation or every conceivable accommodation possible.'" Id.
(quoting Lewis, 908 F.Supp. at 947).  Thus, an employee may expect,
and  is  entitled  to  receive  under  the  law,  a  reasonable
accommodation, but not the accommodation of his choice.

Both  the  burden  of  identifying  an  accommodation  that  would
allow a qualified individual to perform the job that must be filled
and  the  ultimate  burden  of  persuasion  that  the  accommodation  is
reasonable rest with that individual. Willis v. Conopco, 108 F.3d
282, 284-85 (11th Cir. 1997).  Plaintiff suggests that a reasonable
accommodation for his impairment was for Defendant to permit him to

27

continue operating as a BEM but with the other BEMs shouldering the strenuous duties that he could not perform on his own.  This is a demand that Plaintiff may not make, and one that Defendant need not heed.  <u>See</u> <u>Davis</u>, 442 U.S. 397, 412-13 (1979); <u>see also</u> <u>Stubbs v. Marc Center</u>, 950 F. Supp. 889, 895 (S.D. Ill. 1997) (finding that an employee's request that his duties be shifted to his co-workers and subordinates was not a request for reasonable accommodation under the ADA).

Defendant attempted to accommodate Plaintiff.  First, Plaintiff's supervisor requested documentation of his medical restrictions.  When he would not provide a new letter from his doctor, Defendant offered Plaintiff a position that he could perform under his previously documented limitations.  This position as a mail clerk provided him with the same pay, the same time off, the same hours, and location as he had as a BEM.  This position was also something that Plaintiff could do with the medical limitations that were previously disclosed to Defendant.

Plaintiff argues in response that he would lose his seniority right to bid on vacations and hours, thus Plaintiff argues that Defendant's accommodation was unreasonable.  While this may have been true, nothing substantiates as much, and it is of no moment to the Court's analysis.  Plaintiff cannot protest and refuse a reasonable accommodation because he fears losing his ability to chose vacation time.  <u>Garner v. Wal-Mart Stores, Inc.</u>, 807 F.2d

1536, 1539 (11th Cir. 1987) ("Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast."). In this case, Plaintiff never knew that he would lose this ability, he never took the modified job offer or tried to ask for time off. Plaintiff's Dep. pp. 114-16. Moreover, it is unreasonable to reject Defendant's offer on that basis alone.

## V. Retaliation

Plaintiff also raises a claim for Retaliation under the Rehabilitation Act. The Rehabilitation Act "incorporates the anti-retaliation provision from § 12203(a) of the Americans with Disabilities Act." Burgos v. Chertoff, 274 Fed. Appx. 839, 843 (11th Cir. 2008) (citing 29 U.S.C. §§ 791(g), 793(d), 794(d) (2006)). That provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). Courts analyze claims under the ADA's anti-retaliation provision through the framework established by McDonnell Douglas, Corp. v. Green, 411 U.S. 792 (1973), to analyze Title VII claims of retaliation. See Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).

## A. Plaintiff's Prima Facie Case

Under the McDonnell-Douglas framework used in Title VII cases, Plaintiff must first make a prima facie showing that (1) he engaged

in activity protected by the act; (2) he subsequently suffered adverse action by the employer; and (3) a causal connection existed between the protected activity and the adverse action.  Wolf v. Coca-Cola, 200 F.3d 1337, 1342 (11th Cir. 2000).  Defendant does not contest that Plaintiff's EEO complaints qualify as a protected activity under the Act.  However, Defendant does argue that the adverse employment action Plaintiff claims he suffered are not, as a matter of law, actionable.  Additionally, Defendant argues that Plaintiff cannot establish a causal connection between his protected activity and the adverse employment action that he allegedly suffered.

In his Response (DE 38), Plaintiff claims that the retaliation he suffered for engaging in his protected activity took two different forms: first, he was required to work outside his medical restrictions; second, Gesswein instructed Plaintiff to sign a modified job offer as a mail clerk.  DE 38, p. 16.  He claims that in this position as a mail clerk he would have had a change of days, the hours he worked, his bidding rights, and the selection of vacation periods.  Id. pp. 16-17.  This argument is belied by Plaintiff's Deposition testimony where he testified that his salary, days off, and workplace would not change, but his bidding rights for vacation time would have changed.  Plaintiff's Dep. 114-18.

The relevant portion of the ADA, governing retaliation under

the Act, states that:

> No person shall discriminate against any individual
> because such individual has opposed any act or practice
> made unlawful by this chapter or because such individual
> made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing
> under this chapter.

42 U.S.C. § 12203(a)(2006).  The above-quoted language is more circumscribed than the retaliation language in other federal statutes.  It states only that "no person shall discriminate against" an individual because they engaged in protected activity. Despite the statute only using the term "discriminate," courts have ascribed different meanings that conform with the retaliation prohibited in other areas of employment law.  In Shotz v. City of Plantation, Fla., 344 F.3d 1161 (11th Cir. 2003), the Eleventh Circuit articulated the standard to be used for retaliation claims under the ADA.  Id. at 1181-84.  The standard applied in Shotz is both an objective and subjective standard:

> Indeed, not "every unkind act" is sufficiently
> adverse.  Rather, we analyze that sufficiency "on a case-
> by-case basis, using both a subjective and objective
> standard."  As a general rule, "[a]n ADA plaintiff must
> demonstrate that a reasonable person in his position
> would view the . . . action in question as adverse."  We
> have said that "[a]n employment action is considered
> 'adverse' only if it results in some tangible, negative
> effect . . . ."
>
> [W]hile conduct must be material to be adverse in
> this context, it need not be traumatic.  If we set the
> bar too high, we run the risk of chilling legitimate
> opposition to unlawful and discriminatory practices, and
> "could stifle [a person's] willingness to file charges of
> discrimination.

Hidgon v. Jackson, 393 F.3d 1211, 1219 (11th. Cir. 2004) (quoting Shotz, 344 F.3d at 1181, 1182-83). Other courts have ascribed to the term "discriminate" the meaning used in Title VII cases for harassment: a materially adverse employment action. The holding in Shotz is premised on employment case law and the proposition that "a reasonable person in [Plaintiff's] position would view the . . . action in question as adverse." Shotz, 344 F.3d at 1181 (quoting Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998); see also Scafidi v. Baldwin Un. Free School Dist., 295 F. Supp. 2d 235, 238 (E.D.N.Y. 2003) (noting the retaliation must be materially adverse). The Shotz court went on to note that "[a]n employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." Id. (quoting Lucas, 257 F.3d at 1261). The court then reasoned that to establish a prima facie case, "an employee must show a serious and material change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." Davis, 245 F.3d at 1239 (emphasis omitted).

This language is similar, though not identical to the language used in Title VII cases. In that realm the Eleventh Circuit has applied the language used by the Supreme Court in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998), and held that a plaintiff must show that he suffered a tangible employment action, which is a "significant change in employment status, such as hiring, firing,

failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." <u>Brown v. Snow</u>, 440 F.3d 1259, 1265 (11th Cir. 2006) (quoting <u>Johnson v. Booker T. Washington Broad. Serv., Inc.</u>, 234 F.3d 501, 512 (11th Cir. 2000) (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998))).   The language used in <u>Brown</u> applies to claims for sexual harassment under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et</u> <u>seq.</u> (2006), and do not encompass retaliation claims for filing a claim with the EEO.   See <u>Burlington N. & Santa Fe. Ry. Co. v. White</u>, 548 U.S. 53, 57-59 (2006) (noting the distinction).

In <u>Burlington</u>, the Supreme Court distinguished its holding in <u>Ellerth</u> and stated that it does not apply to cases involving retaliation.   <u>Id.</u> at 2413.   The Supreme Court stated,

> we conclude that Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions."

<u>Id.</u> at 67.

In <u>White</u>, the Supreme Court went on to approve the formulation used by the Seventh and D.C. Circuits to determine whether a reasonable employee would have found the challenged action materially adverse: "which in this context means it well might have

33

dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 67-68, quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) and Washington v. Ill. Dept. of Rev., 420 F.3d 658, 662-63 (7th Cir. 2005). The Supreme Court went on to note that anti-retaliation laws do not protect individuals from all retaliation, only from "retaliation that produces an injury or harm." Id. at 67.

To recover for an allegedly adverse action, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Id. at 68. This allows courts to "separate significant from trivial harms." Id. Because, "not everything that makes an employee unhappy is actionable adverse action." Manning v. Metro Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997); see also Randlett v. Shala, 118 F.3d 857, 862 (1st. Cir. 1997) (noting that there exists "a de minimis threshold" for retaliation claims). It is unclear whether the holding in White would apply equally to retaliation claims under the ADA, as it does for retaliation claims under Title VII. There is no indication that White would only apply to retaliation cases brought under Title VII. Therefore, the Court will apply the standard articulated in White to determine whether the adverse employment actions Plaintiff claims he suffered are actionable, or are simply among the inconveniences for which the law offers no redress. See Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) ("Not

34

everything that makes an employee unhappy is an actionable adverse employment action.").

As noted above, the two actions Plaintiff complains of center on him having to work outside his medical restrictions and having to work the mail clerk position.  Under the standard articulated in White "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  White, 548 U.S. at 68. This statement derives it meaning from facts recounted in White and the cases it cited approvingly.  In all three cases, the adverse consequence went beyond a mere negative performance evaluation and touched upon something personal to the employee.  See Rochon, 438 F.3d at 1219 (threats to the plaintiff's family); Washington, 420 F.3d at 662-63 (the difficulty of caring for a sick child and being forced to expend sick time to do so because of the defendant's actions); White, 548 U.S. at 68 (forcing the plaintiff to engage in more strenuous and less prestigious work).  In the instant case, Plaintiff did not fall ill or have another heart attack because he was forced to go on the travel detail.  However, it is reasonable to assume that a person who is under medical restrictions who has to work outside those restrictions would find the certain fear of aggravating his medical condition sufficient to dissuade him from further engaging in a protected activity.  While Plaintiff did not

suffer a heart attack, and he was free not to use his fellow BEM's tool box when working on the travel detail, those facts do not bear on the Court's analysis.  The practical choices that Plaintiff could have made at the time he worked outside his medical restrictions are different from the question of whether working outside a person's restrictions would dissuade a reasonable worker from making complaints.  The Court finds that it would.

The same is not true of Plaintiff being forced to accept an accommodation as a mail clerk.  Plaintiff's claim comes down to the fact that he was given an accommodation for his medical restrictions that he did not like.  He wanted to maintain the status quo of putting off work onto the other BEMs.  Stubbs, 950 F. Supp. at 895. However, Defendant gave him a position that gave him the same wages, hours, days off, but allegedly forced him to lose his seniority and thus his ability to bid on vacation days.  Plaintiff has not cited any caselaw that would suggest that an employee losing his ability to bid on vacation days is a materially adverse employment action. The issue for Plaintiff's retaliation does not center on the loss of vacation time, but whether the hypothetical inability to chose certain vacation time is something that would dissuade a reasonable worker from asserting his rights under the ADA.  This sort of possible injury to the choice of vacation time is the sort of de minimis injury that the law does not recognize. Manning, 127 F.3d at 692 (Not everything that "makes an employee unhappy is actionable

36

adverse action."). Thus, Plaintiff's claim that he was retaliated against by being given a position at work that kept him from maintaining his union seniority for vacation bidding purposes, fails as a matter of law.

Once Plaintiff has established that he has suffered an adverse employment action, he must establish a causal connection between the protected activity and the action. A causal connection can be established through either direct evidence, or inferred from the time between the protected activity and the adverse employment action.[3] See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271-72 (2001). Courts have determined that as a matter of law varying time frames between the protected activity and the adverse action are too remote for the Court to infer causation. See id. at 273-74 (concluding that twenty months was not a temporal connection); see also Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (rejecting a FMLA retaliation claim because three-and-a-half months was too long to find a retaliatory connection); Draggo v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (three months time is insufficient). The facts of each case will determine how the Court frames the time span between the operative events.

Here, Plaintiff made his last EEO Complaint on December 8, 2004, and he was assigned beyond his restrictions on the travel

---

[3] Plaintiff has not made any allegations suggesting direct evidence of retaliation.

detail on February 24, 2005.  This is close to three months time. The time line is much more attenuated for purposes of the May 2, 2005, signing of a job modification.  This would stretch almost six months and fails as a matter of law to establish causation.  <u>Draggo</u>, 453 F.3d at 1308.  Concerning Plaintiff's assignment to the travel detail, the time line alone is also insufficient to establish causation because Plaintiff cannot establish that Geisswein, his manager, knew of his protected activity.  DE 38, p. 17; <u>see Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993) (noting the decision maker must be "actually aware of the protected expression at the time it took the adverse employment action."). Thus, while the time frame short of three months does not automatically foreclose the possibility of Defendant harboring animus for Plaintiff's protected activities, the time frame coupled with Geisswein's ignorance of the protected activity precludes Plaintiff from establishing causation.

The Court finds that Plaintiff's evidence in this regard is lacking and does not establish a <u>prima facie</u> case of retaliation. Therefore, taking the facts in the light most favorable to Plaintiff, he has not met the low burden of establishing a <u>prima facie</u> case of discrimination under the McDonnell Douglas analysis.

However, for the benefit of the Parties and any reviewing court, the Court will analyze the remainder of Plaintiff's retaliation claims under the McDonnell Douglas burden shifting

analysis.

B. <u>Defendant's Neutral Non-Retaliatory Reason</u>

Once Plaintiff has made a <u>prima</u> <u>facie</u> showing as to causation the burden shifts to Defendant to offer a neutral, non-retaliatory reason for his acts that Plaintiff considers retaliatory. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Gupta v. Florida Bd. of Regents</u>, 212 F.3d 571, 590 (11th Cir. 2000). This burden is one of production, and not persuasion, <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993); <u>Burdine</u>, 450 U.S. at 256-58, because under this <u>McDonnell Douglas</u> burden shifting analysis, "[t]he plaintiff [always] retains the burden of persuasion." <u>Burdine</u>, 450 U.S. at 256.

Defendant has offered its need to train new workers because of anticipated turnover in the department as the neutral, non-retaliatory reason for assigning Plaintiff to the travel detail. Second, Defendant defends the offer to have Plaintiff sign the form accepting the position as a mail clerk as a reasonable accommodation for his medical limitations. As noted above, Plaintiff could not fulfill the essential duties as a BEM. Therefore, Defendant offered Plaintiff a position that gave him the same pay, time off, and schedule as an accommodation. Both of these reasons are supported by the record. Defendant has met its burden of production.

C. <u>Pretext</u>

The burden now shifts to Plaintiff to demonstrate through

sufficient evidence that Defendant's neutral, non-retaliatory reasons for the adverse employment actions are pretext and undeserving of credibility. McDonnell Douglas, 411 U.S. at 804. Plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256; see also Hicks, 509 U.S. at 509. "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (citing Chapman v. AI Transp., 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)).

To establish pretext, Plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman, 229 F.3d at 1024 (citation omitted). The evidence offered must be "significantly probative" as to the issue of pretext. Mayfield v. Patterson Plumbing, Co., 101 F.3d 1371, 1376 (11th Cir. 1996).

A plaintiff's subjective belief that he has been the victim of retaliation is insufficient to establish pretext. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1083 (11th Cir. 1990) (noting

if an employee alleges discrimination in a conclusory way, but offers nothing more than a bare allegation, summary judgment is appropriate). Additionally, mere speculation and conjecture cannot serve as a basis for establishing pretext. See Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) ("A plaintiff's subjective opinion that defendant's action was discriminatory, without supportive evidence, is not sufficient to establish pretext to avoid summary judgment."). An employee cannot succeed by simply quarreling with the wisdom of the employer's reason. Chapman, 229 F.3d at 1030. The Eleventh Circuit in Chapman stated:

> Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken a firm's managers, the . . . [law] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Id. at 1030 (quotation omitted). Thus, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a retaliatory reason. Id.; see Alexander v. Fulton County, Ga., 207 F.3d 1012, 130 (noting in a Title VII case that "it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated").

In the instant action, Plaintiff's Response (DE 38) spends four lines discussing the evidence establishing that Defendant's stated reason is pretext. It states:

41

> In addition, there is evidence that Defendant treats
> disabled employees who do not file EEO complaints
> differently.  The agency permitted one of Mr. Shannon's
> co-workers to become a building equipment mechanic even
> though the co-worker could not qualify for the position
> because of his medical restrictions.

DE 38, p. 17.  Plaintiff does not refer the Court to any evidence to support this proposition.  However, an inadmissable letter was attached to his Affidavit as Exhibit H, and it loosely supports such a proposition. This letter has been stricken as unauthenticated, and thus will not be considered by the Court.  If the Court were to consider Plaintiff's evidence it still does not suggest that Defendant's stated reasons are pretext.

Plaintiff and the employee whose letter was produced are not similarly situated.  In determining whether employees are similarly situated "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated 'in all relevant respects.'" Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Holifield 115 F.3d at 1562); but see Anderson v. WBMG-42, 253 F.3d 561 (11th Cir. 2001).  A similarly situated employee must be nearly identical to the plaintiff to prevent the Court from second guessing a reasonable personnel decision made by an employer, see Wilson, 376 F.3d at 1091, and, thus, acting as an Article III personnel

department.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470
(11th Cir. 1991).

The burden upon Plaintiff is one of persuasion.  Hicks, 509
U.S. at 506-07; Burdine, 450 U.S. at 256.  In his Response,
Plaintiff has offered only bare allegations and failed to provide
evidence, that he is similarly situated to another employee who did
not engage in protected activity and was treated more favorably than
he.  Thus, Plaintiff has failed to present facts that would create
a genuine issue of fact for a reasonable jury to find that
Defendant's stated reasons are pretext.  Further, Plaintiff cannot
establish that Geisswein knew of Plaintiff's protected activity when
he assigned him to the travel detail.  See Goldsmith, 996 F.2d at
1163 (noting the decision maker must be "actually aware of the
protected expression at the time it took the adverse employment
action.").

## VI. Conclusion

Therefore, the Court finds that Plaintiff has failed to
establish a prima facie case of discrimination under the
Rehabilitation Act.  He has failed to establish that he was disabled
as defined by the Act, that he was otherwise qualified for the
position of a BEM, or that he was considered disabled by Defendant.
In addition, Plaintiff has failed to make a prima facie case of
retaliation under the Rehabilitation Act.  He has failed to
establish that he suffered an adverse employment action or that a

causal connection exists between his protected activity and Defendant's employment decisions that he claims were retaliatory. If it were later determined that Plaintiff did make a prima facie case of retaliation, Defendant has set forth a legitimate, non-retaliatory reason for the decision, and Plaintiff has failed to suggest, let alone create, a triable issue as to whether Defendant's reason is pretext. Therefore, summary judgment will be entered for Defendant and against Plaintiff on the claims raised in his Amended Complaint (DE 15).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That Defendant John E. Potter's Motion For Summary Judgment (DE 31) be and the same is hereby **GRANTED**; and

2. Final Judgment shall be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ___29th___ day of October, 2008.


_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

44